MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

| | |
|---|---|
| JESUS TECUN, MANUEL CIPRIANO MEJIA, CONCEPCION SANCHEZ ALONSO, CRISTINA GATICA LUNA, LAURO GARZON VALENCIA FLORES, and MIRIAM PINOS BUENDIA, *individually and on behalf of others similarly situated,* | **COMPLAINT**  **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** |

                                        *Plaintiffs*,

                  -against-

MILDRED DELI GROCERY INC. (d/b/a
MILDRED DELI & GROCERY),
COLOMBIA NUNEZ and AURELIA
MEDINA,

                                        *Defendants.*
--------------------------------------------------------X

          Jesus Tecun, Manuel Cipriano Mejia, Concepcion Sanchez Alonso, Cristina Gatica Luna,

Lauro Garzon Valencia Flores, and Miriam Pinos Buendia individually and on behalf of others

similarly situated (collectively "Plaintiffs"), by and through their attorney, Michael Faillace &

Associates, P.C., upon their knowledge and belief, and as against Mildred Deli Grocery Inc.

(d/b/a Mildred Deli & Grocery), Colombia Nunez, and Aurelia Medina (collectively

"Defendants"), allege as follows:

                              <u>**NATURE OF THE ACTION**</u>

1.      This is an action to recover minimum and overtime wages and liquidated damages, interest, costs, and attorneys' fees for violations of the FLSA ("FLSA"), the New York Labor Law ("NYLL"), and associated rules and regulations.

2.      Plaintiffs are former employees of Mildred Deli Grocery Inc. (d/b/a Mildred Deli & Grocery), Colombia Nunez, and Aurelia Medina.

3.      Defendants own, operate, and/or control a Deli/grocery located at 231 E. 116th Street, New York, New York 10029 under the name Mildred Deli & Grocery.

4.      Upon information and belief, Defendants Colombia Nunez and Aurelia Medina serve or served as owners, managers, principals or agents of Defendant Corporation and through this corporate entity operate the Deli/grocery.

5.      Plaintiffs were employed as cashiers and ostensibly as delivery workers.

6.      However, the delivery workers were also required to perform various other restaurant duties, such as dishwashing, preparing food, cleaning the kitchen, the awning, the owner's residence (which was the same building as the deli), the stoves, and tables, sweeping and mopping, twisting and tying up cardboard boxes, and throwing them out, throwing out the garbage, cutting meat and vegetables, recycling bottles, stocking boxes of beverages in the basement, carrying fruit out to the fruit stand, changing lights, fixing cables, stock, cleaning the stairs (2 to 3 times a week), and buying merchandise (3 times a week) (hereinafter non- tip duties).

7.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

8.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

10.     Defendants ostensibly employed and accounted for some Plaintiffs as delivery workers in their payroll, but in actuality their duties required greater or equal time spent in non-tipped functions, including those outlined above.

11.     Regardless, at all times, Defendants paid these Plaintiffs (and other similarly situated employees) at a rate that was lower than the required tip-credit rate.

12.     In addition, under state law, Defendants were not entitled to take a tip credit because these Plaintiffs (and other similarly situated employees') non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever was less in each day. (12 N.Y.C.R.R. §146).

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs (and other similarly situated employees') actual duties in payroll records to avoid paying them at the minimum wage rate, and to enable them to pay these Plaintiffs (and other similarly situated employees) at the lower tip-credited rate (which they still failed to do) by designating them as delivery workers or other tipped workers instead of as non-tipped employees.

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

15. Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

16. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6(a) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

18. Plaintiffs seek certification of this action as a collective action on behalf of themselves individually, and all other similarly situated employees and former employees of defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district,

Defendants maintained their corporate headquarters and offices within this district, and Defendants operate a Deli/grocery located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

21.     Plaintiff Jesus Tecun ("Mr. Tecun" or "Plaintiff Tecun") is an adult individual residing in New York County, New York.  Mr. Tecun was employed by defendants from approximately January 2015 until on or about July 2016.

22.     Plaintiff Manuel Cipriano Mejia ("Mr. Cipriano" or "Plaintiff Cipriano") is an adult individual residing in New York County, New York.  Mr. Cipriano was employed by defendants from approximately April 2015 until on or about March 2016.

23.     Plaintiff Concepcion Sanchez Alonso ("Mr. Sanchez" or "Plaintiff Sanchez") is an adult individual residing in New York County, New York. Mr. Sanchez was employed by defendants from approximately May 2013 until on or about November 2013 and from approximately October 2015 until on or about June 20, 2016.

24.     Plaintiff Cristina Gatica Luna ("Ms. Gatica" or "Plaintiff Gatica") is an adult individual residing in New York County, New York. Ms. Gatica was employed by defendants from approximately March 9, 2015 until on or about October 2015.

25.      Plaintiff Lauro Garzon Valencia Flores ("Mr. Garzon" or "Plaintiff Garzon") is an adult individual residing in New York County, New York. Mr. Garzon was employed by Defendants from approximately January 2014 until on or about December 2014.

26.     Plaintiff Miriam Pinos Buendia ("Ms. Pinos" or Plaintiff Pinos") is an adult individual residing in Bronx County, New York. Ms. Pinos was employed by defendants from approximately February 2014 until on or about February 2015.

*Defendants*

27.     At all times relevant to this Complaint, Defendants own, operate, and/or control a Deli/grocery located at 231 E. 116th Street, New York, New York 10029, under the name Mildred Deli & Grocery.

28.     Upon information and belief, Mildred Deli Grocery Inc. (Defendant Corporation) is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 231 E. 116th Street, New York, New York 10029.

29.     Defendant Colombia Nunez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

30.     Defendant Colombia Nunez is sued individually in her capacity as an owner, officer and/or agent of the Defendant Corporation.

31.     Defendant Colombia Nunez possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation.  She determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

32.     Defendant Aurelia Medina is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

- 6 -

33.     Defendant Aurelia Medina is sued individually in her capacity as an officer and/or agent of Defendant Corporation.

34.     Defendant Aurelia Medina possessed operational control over Defendant Corporation, and controlled significant functions of Defendant Corporation.  She determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

35.     Defendants operate a Deli/grocery located in the East Harlem section of Manhattan.

36.     Defendants maintained as their principal place of business a centralized office which is also the location of the Deli/grocery.

37.     Individual Defendants Colombia Nunez and Aurelia Medina possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

38.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

39.     Each Defendant possessed substantial control over Plaintiffs (and other similarly situated employees) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals referred to herein.

40.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

41.     In the alternative, Defendants constitute a single employer of Plaintiffs and all similarly situated individuals.

42.     Upon information and belief, individual defendants Colombia Nunez and Aurelia Medina  operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as a legal entity separate and apart from themselves by, among other things:

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b)     defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)     transferring assets and debts freely as between all Defendants;

(d)     operating Defendant Corporation for their own benefit as the sole or majority shareholders;

(e)     operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)     intermingling assets and debts of their own with Defendant Corporation;

(g)     diminishing and/or transferring assets of Defendant Corporation to protect their own interests; and

(h)     other actions evincing a failure to adhere to the corporate form.

43.     At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their services.

44.     In each year from 2013 to 2016, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

45.     In addition, upon information and belief, defendants and/or their enterprise were directly engaged in interstate commerce.  For example, numerous items that were used in the Deli/grocery on a daily basis, such as olive oil and meat, are produced outside of the State of New York.

*Individual Plaintiffs*

46.     Plaintiffs are former employees of Defendants, who primarily were employed as cashiers and ostensibly employed as delivery workers.  However, the delivery workers were required to do the non-tipped tasks outlined above at the deli/grocery.

47.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jesus Tecun*

48.     Plaintiff Tecun was employed by Defendants from approximately January 2015 until on or about July 2016.

49.     At all times relevant to this complaint, Defendants ostensibly employed Plaintiff Tecun as a delivery worker.

50.     However, Plaintiff Tecun was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

51.     Although Plaintiff Tecun was ostensibly employed as a delivery worker, he spent over twenty percent of each day performing non-delivery work throughout his employment with Defendants.

52.     Plaintiff Tecun's work duties required neither discretion nor independent judgment.

53.     Plaintiff Tecun regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

54.     Throughout his employment with Defendants, Plaintiff Tecun regularly worked in excess of 40 hours per week.

55.     From approximately January 2015 until on or about March 2015, Plaintiff Tecun worked from approximately 11:00 a.m. until on or about 11:00 p.m. five days a week and from approximately 11:00 a.m. until on or about 11:30 p.m. two days a week (typically 85 hours per week).

56.     From approximately March 2015 until on or about July 2016, Plaintiff Tecun worked from approximately 11:00 a.m. until on or about 11:00 p.m. four days a week, from approximately 11:00 a.m. until on or about 11:30 p.m. two days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. on Tuesdays (typically 79 hours per week).

57.     Throughout his entire employment, Plaintiff Tecun was paid his wages in cash.

58.     From approximately January 2015 until on or about March 2015, Defendants paid Plaintiff Tecun a fixed salary of $670 per week.

59.     From approximately March 2015 until on or about January 2016, Defendants paid

Plaintiff Tecun a fixed salary of $650 per week.

60.      From approximately January 2016 until on or about July 2016, Defendants paid Plaintiff Tecun a fixed salary of $700 per week.

61.      Defendants never granted Plaintiff Tecun any meal breaks or any other kind of rest period of any length.

62.      Plaintiff Tecun's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

63.      In fact, Defendants required Plaintiff Tecun to continue working 30 minutes past his scheduled departure time at least two days a week and did not pay him for the additional time they required him to work.

64.      Plaintiff Tecun was never notified by Defendants that his tips were being included as an offset for wages.

65.      Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Tecun's wages.

66.      Plaintiff Tecun was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

67.      Further, Defendants did not provide Plaintiff Tecun with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

68.       No notification, either in the form of posted notices or other means, was given to Plaintiff Tecun regarding overtime and wages under the FLSA and NYLL.

69.      Defendants never provided Plaintiff Tecun with a written notice, in English and in

Spanish (Plaintiff Tecun's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

70.     Defendants required Plaintiff Tecun to purchase "tools of the trade" with his own funds—including two bikes, a jacket , a chain , six padlocks, a basket and two pairs of lights.

*Plaintiff Manuel Cipriano Mejia*

71.     Plaintiff Cipriano was employed by Defendants from approximately April 2015 until on or about March 2016.

72.     At all times relevant to this complaint, Defendants ostensibly employed Plaintiff Cipriano as a delivery worker.

73.     However, Plaintiff Cipriano was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

74.     Although Plaintiff Cipriano was ostensibly employed as a delivery worker, he spent over twenty percent of each day performing non-tip work throughout his employment with Defendants.

75.     Plaintiff Cipriano's work duties required neither discretion nor independent judgment.

76.     Plaintiff Cipriano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

77.     Throughout his employment with Defendants, Plaintiff Cipriano regularly worked in excess of 40 hours per week.

78.     From approximately April 2015 until on or about November 2015, Plaintiff Cipriano worked from approximately 11:00 a.m. until on or about 11:20 p.m. seven days a week (typically 86.5 hours per week).

79.     From approximately November 2015 until on or about March 2016, Plaintiff Cipriano worked from approximately 11:00 p.m. until on or about 11:20 a.m. six days a week and from approximately 11:00 p.m. until on or about 7:20 a.m. one day a week (typically 82.5 hours per week).

80.     Throughout his employment with Defendants, Plaintiff Cipriano was paid his wages in cash.

81.     From approximately April 2015 until on or about November 2015, Plaintiff Cipriano   was paid a fixed salary of $500 per week.

82.     From approximately November 2015 until on or about February 2016, Plaintiff Cipriano was paid a fixed salary of $470 per week.

83.     From approximately February 2016 until on or about March 2016, Plaintiff Cipriano was paid a fixed salary of $550 per week.

84.     Defendants never granted Plaintiff Cipriano any meal breaks or any other kind of rest period of any length.

85.     Plaintiff Cipriano's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

86.     In fact, Defendants regularly required Plaintiff Cipriano to continue working 20 minutes past his scheduled departure time at least two days a week and did not pay him for the additional time they required him to work.

87.     Plaintiff Cipriano was never notified by Defendants that his tips were being included as an offset for wages.

88.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cipriano's wages.

- 13 -

89. Plaintiff Cipriano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

90. Further, Defendants never provided Plaintiff Cipriano with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

91. No notification, either in the form of posted notices or other means, was given to Plaintiff Cipriano regarding overtime and wages under the FLSA and NYLL.

92. Defendants never provided Plaintiff Cipriano with a written notice, in English and in Spanish (Plaintiff Cipriano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

93. Defendants required Plaintiff Cipriano to purchase "tools of the trade" with his own funds—including four pairs of pants and two pairs of shoes.

*Plaintiff Concepcion Sanchez Alonso*

94. Plaintiff Sanchez was employed by Defendants from approximately May 2013 until on or about November 2013 and from approximately October 2015 until on or about June 20, 2016.

95. Defendants employed Plaintiff Sanchez as a cashier.

96. Mr. Sanchez's work duties required neither discretion nor independent judgment.

97. Plaintiff Sanchez regularly handled goods in interstate commerce, such as fish, meats, vegetables and other supplies produced outside of the State of New York.

98. Throughout his employment with Defendants, Plaintiff Sanchez regularly worked in excess of 40 hours per week.

99.     From approximately May 2013 until on or about November 2013, Plaintiff Sanchez worked from approximately 11:00 a.m. until on or about 11:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:30 p.m. four days a week (typically 86 hours per week).

100.    From approximately October 2015 until on or about June 20, 2016, Plaintiff Sanchez worked from approximately 12:00 p.m. until on or about 12:30 a.m. seven days a week (typically 87.5 hours per week).

101.    Throughout his employment with Defendants, Plaintiff Sanchez was paid his wages in cash.

102.    From approximately May 2013 until on or about November 2013, Defendants paid Plaintiff Sanchez a fixed salary of $500 per week.

103.    From approximately October 2015 until on or about June 20, 2016, Defendants paid Plaintiff Sanchez a fixed salary of $550 per week.

104.    Plaintiff Sanchez's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

105.    In fact, from approximately May 2013 until on or about November 2013, defendants required Plaintiff Sanchez to continue working 20 minutes past his scheduled departure time four days a week, and did not compensate him for the additional time they required him to work.

106.    Similarly, from approximately October 2015 until on or about June 20, 2016, defendants required Plaintiff Sanchez to continue working 30 minutes past his regular departure time every day, and did not pay him for the additional time they required him to work.

107.   Plaintiff Sanchez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

108.   Defendants never granted Plaintiff Sanchez any kind of meal break or rest period of any length.

109.   Further, Defendants never provided Mr. Sanchez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

110.   Defendants never provided Plaintiff Sanchez with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

111.   No notification, either in the form of posted notices or other means, was given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

112.   Defendants never provided Plaintiff Sanchez with a written notice, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Cristina Gatica Luna*

113.    Plaintiff Gatica was employed by Defendants from approximately March 9, 2015 until on or about October 2015.

114.   Plaintiff Gatica was employed by Defendants as a cashier.

115.   Plaintiff Gatica's work duties required neither discretion nor independent judgment.

116.   Plaintiff Gatica regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

117.    Throughout her employment with Defendants, Plaintiff Gatica regularly worked in excess of 40 hours per week.

118.    From approximately March 2015 until on or about May 2015, Plaintiff Gatica worked from approximately 10:00 a.m. until on or about 12:30 a.m. seven days a week (typically 101.5 hours per week).

119.    From approximately May 2015 until on or about October 2015, Plaintiff Gatica worked from approximately 10:00 a.m. until on or about 12:30 a.m. Thursdays through Tuesdays (typically 87.5 hours per week).

120.    Throughout her employment with Defendants, Plaintiff Gatica was paid her wages in cash.

121.    From approximately March 2015 until on or about October 2015, Defendants paid Plaintiff Gatica a fixed salary of $420 per week.

122.    Plaintiff Gatica's pay did not vary even when she was required to stay later or work a longer day than his usual schedule.

123.    For example, Defendants required Plaintiff Gatica to start working one hour prior to her regular start time and continue working one and a half hours past her scheduled departure time and did not compensate her for the additional time they required her to work.

124.    Defendants never granted Plaintiff Gatica any kind of meal break or rest period of any length.

125.    Plaintiff Gatica was never notified by Defendants that her tips were being included as an offset for wages.

126.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gatica's wages.

- 17 -

127.    In addition, defendants withheld a portion of the tips customers left for Plaintiff Gatica.

128.    Plaintiff Gatica was not required to keep track of her time, nor to her knowledge did Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected her actual hours worked.

129.    Further, Defendants never provided Plaintiff Gatica with any document or other statement accurately accounting for all of her actual hours worked, or setting forth the rate of pay for all of her hours worked.

130.    Defendants did not provide Plaintiff Gatica with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

131.    No notification, either in the form of posted notices or other means, was given to Plaintiff Gatica regarding overtime and wages under the FLSA and NYLL.

132.    Defendants never gave any notice to Plaintiff Gatica, in English and in Spanish (Plaintiff Gatica's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

### *Plaintiff Lauro Garzon Valencia Flores*

133.    Plaintiff Garzon was employed by Defendants from approximately January 2014 until on or about December 2014.

134.    From approximately January 2014 until on or about April 2014, Defendants employed Plaintiff Garzon as a delivery worker; from approximately May 2014 until on or about December 2014, defendants employed Plaintiff Garzon as a house worker.

135.    Mr. Garzon's work duties required neither discretion nor independent judgment.

136.    Plaintiff Garzon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

137.    Throughout his employment with Defendants, Plaintiff Garzon regularly worked in excess of 40 hours per week.

138.    From approximately January 2014 until on or about April 2014, Plaintiff Garzon worked as a delivery worker from approximately 11:00 p.m. until on or about 11:20 a.m. three days a week and from approximately 11:00 p.m. until on or about 2:30 or 3:00 p.m. three days a week (typically 83.5 to 85 hours per week).

139.    From approximately May 2014 until on or about December 2014, Plaintiff Garzon worked as a house worker for Ms. Colombia's son for 11 to 12 hours a day six days a week (typically 66 to 72 hours per week).

140.    Throughout his employment with Defendants, Plaintiff Garzon was paid his wages in cash.

141.    From approximately January 2014 until on or about April 2014, Defendants paid Plaintiff Garzon a fixed salary of $400 per week.

142.    From approximately May 2014 until on or about December 2014, Defendants paid Plaintiff Garzon a fixed salary of $600 per week.

143.    Plaintiff Garzon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

144.    Specifically, from approximately January 2014 until on or about April 2014, Defendants required Plaintiff Garzon to continue working 20 minutes past his scheduled departure time three days a week and three and a half to four hours past his scheduled departure

time three days a week and did not compensate him for the additional time they required him to work.

145.    From approximately January 2014 until on or about April 2014, defendants did not grant Plaintiff Garzon meal breaks or rest periods of any kind.

146.    Plaintiff Garzon was never notified by Defendants that his tips were being included as an offset for wages.

147.    Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Garzon's wages.

148.    In addition, Defendants withheld all of the tips customers paid Plaintiff Garzon for orders placed through the internet.

149.    Plaintiff Garzon was not required to keep track of his time, nor to his knowledge did Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

150.    Further, Defendants never provided Mr. Garzon with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

151.    Defendants did not provide Plaintiff Garzon with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

152.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garzon regarding overtime and wages under the FLSA and NYLL.

153.    Defendants never provided Plaintiff Garzon with a written notice, in English and in Spanish (Plaintiff Garzon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

154.    Defendants required Plaintiff Garzon to purchase "tools of the trade" with his own funds—including bicycle maintenance, a pair of work boots and a pair of gloves.

*Plaintiff Miriam Pinos Buendia*

155.    Plaintiff Pinos was employed by Defendants from approximately February 2014 until on or about February 2015.

156.    Defendants employed Plaintiff Pinos as a cashier.

157.    Ms. Pino's work duties required neither discretion nor independent judgment.

158.    Plaintiff Pinos regularly handled goods in interstate commerce, such as fish, meats, vegetables and other supplies produced outside of the State of New York.

159.    Throughout her employment with Defendants, Plaintiff Pinos  regularly worked in excess of 40 hours per week.

160.    From approximately February 2014 until on or about February 2015, Plaintiff Pinos  worked from approximately 11:00 a.m. until on or about 12:00 a.m. four days a week and from approximately 11:00 a.m. until on or about 1:00 a.m. three days a week (typically 94 hours per week).

161.    Throughout her employment with Defendants, Plaintiff Pinos  was paid her wages in cash.

162.    For a period of one week in February 2014, Defendants paid Plaintiff Pinos  a fixed salary of $400 per week.

163.    For a period of one week in February 2014, defendants paid Plaintiff Pinos a fixed salary of $350 per week.

164.    For a period of one week in February 2014, Defendants paid Plaintiff Pinos  a fixed salary of $300 per week.

165.    For a period of one week in February 2014, Defendants paid Plaintiff Pinos a fixed salary of $250 per week.

166.    From approximately March 2014 until on or about February 2015, defendants paid Plaintiff Pinos a fixed salary of $250 per week.

167.    Plaintiff Pinos' pay did not vary even when she was required to stay late or work a longer day than her usual schedule.

168.    In fact, defendants required Plaintiff Pinos to continue working one hour past her scheduled departure time three days a week, and did not compensate her for the additional time they required her to work.

169.    Plaintiff Pinos was never notified by Defendants that her tips were being included as an offset for wages.

170.    Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Pinos' wages.

171.    In addition, Defendants withheld all of the tips customers paid Plaintiff Pinos.

172.    Plaintiff Pinos was not required to keep track of her time, nor to her knowledge did Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected her actual hours worked.

173.    Defendants never granted Plaintiff Pinos any kind of meal break or rest period of any length.

174.    Further, Defendants never provided Ms. Pinos with any document or other statement accurately accounting for all of her actual hours worked, or setting forth the rate of pay for all of her hours worked.

175.    Defendants never provided Plaintiff Pinos with each payment of wages an

accurate statement of wages, as required by NYLL 195(3).

176.     No notification, either in the form of posted notices or other means, was given to Plaintiff Pinos regarding overtime and wages under the FLSA and NYLL.

177.     Defendants never provided Plaintiff Pinos with a written notice, in English and in Spanish (Plaintiff Pinos' primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

178.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring all Plaintiffs, and all similarly situated employees, to work in excess of forty (40) hours per week without paying them appropriate minimum wage, overtime compensation or "spread of hours" pay, as required by federal and state laws.

179.     All Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

180.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

181.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

182.     Furthermore, as part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of

violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

183.    Defendants unlawfully misappropriated charges purported to be gratuities received by delivery workers and cashiers, and other similarly situated employees, in violation of New York Labor Law § 196-d (2007).

184.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

185.    In addition, defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

186.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

187.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

188.    Defendants required some Plaintiffs to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

189.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

190.    These Plaintiffs were paid at a rate that was below the tip-credit rate required by NYLL.

191.    In addition, under state law, Defendants were not entitled to a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday. 12 N.Y. C.R.R. § 146.

192.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

These Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped, non-delivery duties described above.

193.    In violation of federal and state law, as discussed above, Defendants classified these Plaintiffs as tipped employees but did not even pay them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

194.    Defendants failed to post required wage and hour posters in the workplace, and did not provide Plaintiffs, and all similarly situated employees, with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of the employees' relative lack of sophistication in wage and hour laws.

195.    Plaintiffs were paid their wages in cash.

196.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

197.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

198.    Defendants employed some Plaintiffs as tipped workers and required them to provide their own tools for the job, and refused to compensate them or reimburse them for these expenses.

199.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

200.    Defendants' unlawful conduct is intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former workers.

201.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

202.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

203.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), *i.e.*, persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

204.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

205.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them

minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

206.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

207.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

209.     Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203 (r-s).

210.     Defendants failed to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

211.     Defendants' failure to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

212.     Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

213.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

214.     Defendants, in violation of the FLSA, failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

215.    Defendants' failure to pay Plaintiffs and the FLSA Class members overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

216.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

217.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

218.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

219.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

220.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK LABOR LAW)

221.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

222.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 146-1.4, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

223.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of NYLL § 663.

224.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

Case 1:16-cv-05796-RJS   Document 1   Filed 07/20/16   Page 30 of 40

**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

225.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

226.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

227.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

228.    Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE**
**NEW YORK LABOR LAW)**

229.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

230.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

231.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**(VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

232.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

233.    Defendants never provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

234.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
## (RECOVERY OF EQUIPMENT COSTS)

235.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully

herein.

236.    Defendants required Plaintiffs to pay, without reimbursement, the costs and

expenses for purchasing and maintaining equipment and "tools of the trade" required to

perform their job, such as bicycles, further reducing their wages in violation of the FLSA and

NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

237.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## (VIOLATION OF THE TIP WITHHOLDING PROVISIONS
## OF THE NEW YORK LABOR LAW)

238.  Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

239.  Defendants unlawfully and without permission from Plaintiffs misappropriated

and withheld gratuities paid by customers which should have been retained by Plaintiffs.

240.  Defendants' action violated NYLL §196-d.

241.  Defendants are liable to Plaintiffs in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against

Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of

notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the

pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the

FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violation of the provisions of the FLSA are willful as to Plaintiffs and the FLSA class members;

(e)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL;

(h)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL;

(i)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations;

(j)     Declaring that defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs compensation, hours, wages; and any deductions or credits taken against wages;

(k)    Declaring that Defendants' violations of the NYLL are willful as to Plaintiffs;

(l)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(m)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)    Awarding Plaintiffs and the FLSA class members prejudgment interest and the expenses incurred in this action, including costs and attorneys' fees, as provided by the FLSA and the NYLL;

(p)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)    All such other and further relief as the Court deems just and proper.


Dated: New York, New York
July 20, 2016

MICHAEL FAILLACE & ASSOCIATES, P.C.


By:    _/s/ Michael Faillace_____
       Michael Faillace
       MICHAEL FAILLACE & ASSOCIATES, P.C.

- 33 -

60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 28, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jesus Tecun

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     28 de junio de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 28, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Manuel Cipriano Mejia

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           28 de junio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 28, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Concepcion Sanchez Alonso

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           28 de junio de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 29, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Cristina Gatica Luna

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               29 de junio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 29, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Lauro Garzon Valencia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                *Lauro Carzon*

Date / Fecha:                     29 de junio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 11, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miriam Pinos Buendia

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     11 de julio de 2016